KATZMELINGER
370 LEXINGTON AVENUE, SUITE 1512
NEW YORK, NEW YORK 10017
www.katzmelinger.com

| | |
|---|---:|
| Adam Sackowitz | t: 212.460.0047 |
| Katz Melinger PLLC | f: 212.428.6811 |
| | ajsackowitz@katzmelinger.com |

April 14, 2023

**VIA ECF**
Honorable Cathy L. Waldor
United States District Court, District of New Jersey
Martin Luther King Jr. Courthouse
50 Walnut Street, Room 4040
Newark, New Jersey 07101

  Re: *Lao v. Mr. Car Wash of East Orange, Inc. et al.*
     **Civil Action No. 2:21-cv-20291**

Your Honor:

  We are attorneys for the plaintiff, Jose Lao ("Plaintiff" or "Lao"), in the above-captioned matter and write jointly with counsel for defendants Mr. Car Wash of East Orange, Inc. ("MCWEO"), Mr. Car Wash of Irvington, Inc. ("MCWI"), and Akiva "David" Solomon ("Solomon") (collectively, "Defendants"), to seek approval of the parties' agreement to settle Plaintiff's claims against Defendants, which include claims for minimum wage and overtime violations pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a(4) ("NJWHL"); and for failure to timely pay wages pursuant to the New Jersey Wage Payment Law ("NJWPL").

  The parties respectfully request that the Court approve their settlement agreement, a copy of which was previously submitted to the Court (Dkt. No. 36), and allow them to discontinue Plaintiff's claims with prejudice pursuant to Fed. R. Civ. P. 41 (a)(2).

  **1. Summary of Plaintiff's Claims**

  Plaintiff alleges that he was employed by Defendants as a car wash assistant from in or around September 2015 until on or around June 7, 2020, and then again from in or around September 2020 until in or around November 2020. As a car wash assistant, Plaintiff's principal job duties included, *inter alia*, washing, drying, and detailing cars and cleaning the car wash facility.

Plaintiff alleges that from in or around September 2015 until on or around June 7, 2020,[1] Plaintiff worked at Defendants' MCWEO location. During his time at the MCWEO location, Plaintiff alleges that he worked Mondays through Sundays from approximately 8:00 a.m. until approximately 7:00 p.m., for a total of approximately seventy-seven (77) hours per week. From in or around September 2020 until in or around November 2020, Plaintiff alleges that he worked the same schedule at Defendants' MCWI location.

Plaintiff alleges that he was paid $7.00 per hour for all hours worked from in or around September 2015 until in or around January 2020 and $8.00 per hour for all hours worked during the remainder of his employment. Plaintiff also alleges that he received roughly $30.00 in tips each week he worked.

Based on the foregoing, Plaintiff estimates that he is owed $31,510.75 in unpaid minimum and overtime wages, plus liquidated damages, interest, the costs of this litigation, and reasonable attorneys' fees.

## 2. Defendants' Position

Defendants vehemently deny Plaintiff's allegations and maintain that Plaintiff was properly paid for all hours worked in accordance with federal and state laws.

The parties engaged in extensive settlement negotiations since the commencement of this matter, including a settlement conference before the Court, and ultimately reached an agreement to settle Plaintiff's claims against Defendants for $40,000.00 to be paid to Plaintiff in one lump-sum payment shortly after the Court's approval of the parties' settlement agreement. While Plaintiff and Defendants continue to express opposing views on the likely outcome of this matter, they understand that the factual issues in this matter would likely require a trial, and that each of them would expend significant time and costs to prepare for trial. With such uncertainty on both sides, the risk to Defendants of a substantial judgment against them, and the risk to Plaintiff of failing to prevail on all of his claims, the amount agreed to by Plaintiff and Defendants represents a fair and reasonable settlement at such an early stage of the litigation.

As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

### The Proposed Settlement Should Be Approved

1. The Settlement Resolves Bona Fide Disputes and is Fair and Reasonable to Plaintiff

To approve an FLSA settlement agreement in the Third Circuit, the court must determine whether "the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Davis v. Essex Cty.*, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) (internal quotations and citations omitted). "In determining whether the compromise resolves a bona fide dispute, the Court must be reassured that the settlement 'reflect[s] a reasonable compromise of

---

[1] The MCWEO location was closed from in or around March 2020 until in or around April 2020 due to the COVID-19 pandemic. As a result, Plaintiff did not work for Defendants during this period.

disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching,' and the bona fide dispute must be determined to be one over 'factual issues' not 'legal issues such as the statute's coverage or applicability.'" *Brumley v. Camin Cargo Control, Inc.,* 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citations omitted). District courts in the Third Circuit typically consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) in determining whether a FLSA settlement is fair and reasonable. *Cruz v. JMC Holdings, Ltd.*, 2019 WL 4745284, at *4 (D.N.J. Sept. 30, 2019). Those factors are: "...(1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ...." *Id.* (citing *Girsh*, 521 F.2d at 157).

The proposed settlement agreement reflects a reasonable compromise of bona fide disputes regarding Plaintiff's claims, rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel, the settlement was reached at a Court-supervised settlement conference, and the settlement amount $40,000.00 results in a recovery to Plaintiff of $26,070.67, after expenses and proposed attorneys' fees. This sum is fair and reasonable given the early stage at which the settlement was reached; the time and costs associated with continued ligation; the risk that Plaintiff will not prevail on all of his claims after a trial; and the fact that Plaintiff will receive the entire settlement amount shortly after the Court's approval of the settlement agreement.

Moreover, the parties have engaged in extensive negotiations and, through discovery, gathered and exchanged information relevant to the claims and defenses in this matter; and can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *Cruz*, 2019 WL 4745284, at *5 (concluding that the parties appreciated the merits of the case because, *inter alia*, the parties engaged in informal discovery of relevant documents and various arm's-length negotiations). Although the parties hold opposing views on the merit and value of Plaintiff's claims, the arm's length bargaining between such represented parties, along with the information uncovered through discovery, weigh in favor of finding the settlement reasonable.

2. <u>The Settlement Furthers the Implementation of the FLSA</u>

As further explained above, Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims. By reaching a settlement with Defendants, Plaintiff avoids the risks of either receiving an unfavorable outcome in this matter or, if Plaintiff prevails in his claims, attempting to enforce a judgment. Furthermore, the agreement provides that Plaintiff will receive the entire settlement amount in one lump sum payment shortly after the Court's approval of the proposed settlement agreement, which is highly favorable to Plaintiff.

Lastly, the proposed settlement agreement is devoid of any provisions that would frustrate the implementation of the FLSA. Specifically, the proposed agreement does not contain a confidentiality provision, and Plaintiff's release of claims is limited to the claims asserted in in the instant action. *Cruz*, 2019 WL 4745284, at *7 (finding that the proposed agreement did not frustrate the purposes of the FLSA where the agreement did not contain a confidentiality provision and the release was limited to claims asserted in the lawsuit).

3. Plaintiff's counsels' fees are reasonable

Plaintiff and his counsel maintain that the proposed amount of attorneys' fees is also fair and reasonable. "[T]he percentage-of-recovery method has been accepted as an established approach to evaluating the award of attorneys' fees in the Third Circuit." *Brumley*, 2012 WL 1019337, at *9. Under the percentage-of-recovery method, fee awards ranging from 19 percent to 45 percent of the settlement fund have been deemed reasonable. *Id.* at *12; *see also, Davis*, 2015 WL 7761062, at *5. Under the proposed agreement, Plaintiff's counsel would recover $894.00[2] as reimbursement for costs and expenses, and $13,035.33 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover out of Plaintiff's settlement amount fees totaling one-third of any amounts recovered on behalf of Plaintiff, as well as costs and expenses, which is reasonable. *Brumley,* 2012 WL 1019337, at *12 ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases").

Moreover, a lodestar crosscheck also supports Plaintiff's counsel's fee request. As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit A**, Plaintiff's counsel has spent a total of 68.90 hours on this matter, as follows: Kenneth Katz, 1.3 hours; Adam Sackowitz, 24.20 hours; Katherine Morales, 33.30 hours; Jonathan Trinidad-Lira, 10.10 hours. Plaintiff's counsels' hourly rates - $575.00, $435.00, $375.00, and $300.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *4 (D.N.J. Oct. 21, 2016) (approving an hourly rate of $450.00 per hour for a law firm partner and $375.00 per hour for an associate with approximately 4 years of employment law experience); *see also*, *Jian Zhang v. Chongqing Liuyishou Gourmet NJ Inc*, 2019 WL 6318341, at *4 (D.N.J. Nov. 26, 2019) (approving an hourly rate of $550.00 per hour for a law firm partner and $350.00 for a managing associate); *see also, Punter v. Jasmin Int'l Corp.,* 2014 WL 4854446, at *7 (D.N.J. Sept. 30, 2014) (approving an hourly rate of $300.00 per hour for an associate with "over two years of litigation experience and a substantial portion of his practice relates to representation of employment matters").

Mr. Katz is the sole member of Katz Melinger PLLC (the "Firm"), a boutique firm with substantial experience representing plaintiffs in wage and hour matters. Mr. Katz earned his B.A. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr. Katz was admitted to practice in the courts of New York in 2004 and New Jersey in 2016, and has focused his practice in litigation since 2003.

---

[2] The costs and expenses are as follows: $400.00 for the filing fee, and $492.00 in process server fees.

Mr. Sackowitz is a senior associate at the Firm. Mr. Sackowitz earned a B.S. from Cornell University and a J.D. from UCLA School of Law, where he was a Managing Editor of the Journal of International Law & Foreign Affairs. Mr. Sackowitz has been a member in good standing of the New York Bar since 2015 and of the New Jersey Bar since 2016.

Ms. Morales is an associate at the Firm. Ms. Morales earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017. Ms. Morales was admitted to practice in New York in 2018 and New Jersey in 2020. Prior to joining the firm in 2017, Ms. Morales also worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits. Ms. Morales focuses her practice exclusively on employment law matters.

Mr. Trinidad-Lira is an associate at the firm, having earned his B.A. from Fordham University in 2019 and his J.D. from Seton Hall University School of Law in 2022. Mr. Trinidad-Lira has focused his practice on employment law since joining the firm in August 2022 and was admitted to the New Jersey Bar in October 2022.

The $13,035.33 fee sought by Plaintiff's counsel is below Plaintiff's counsel's "lodestar" amount of $26,792.00, and is therefore reasonable. Moreover, as Plaintiff voluntarily agreed, both at the time of settlement and at the initial engagement of counsel, to a one-third fee arrangement, Plaintiff's counsel's fees should be found reasonable. *Davis*, 2015 WL 7761062, at *5 (finding that a lodestar crosscheck supported counsel's fee request as the lodestar amount exceeded the fee sought by plaintiff under their agreement); *see also*, *Brumley*, 2012 WL 1019337, at *12.

Accordingly, the parties respectfully request judicial approval of their proposed settlement agreement, and further request that the Court 'so order' the Proposed Form of Order submitted herewith and grant the parties permission to submit a stipulation of discontinuance with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1) (a) (ii).

Respectfully submitted,

| **KATZ MELINGER PLLC** | **BOND SCHOENECK & KING PLLC** |
|---|---|
| By: */s/ Adam Sackowitz* | By: */s/ Gregory B. Reilly* |
| Adam Sackowitz, Esq. | Gregory B. Reilly, Esq. |
| 370 Lexington Avenue, Suite 1512 | 600 Third Avenue, 22nd Floor |
| New York, New York 10017 | New York, New York 10016 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |